**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-mj-8134-RMM**

FILED BY SP D.C.
Feb 19, 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

**UNITED STATES OF AMERICA**

**v.**

**WILLIE JAMES SKIPPER JR.,**

**Defendant.** /

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Mills Maynard)? NO

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? NO

3. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? NO

4. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? NO

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By: Shannon O'Shea Darsch

SHANNON O'SHEA DARSCH
Assistant United States Attorney
Florida Bar No. 68566
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel: (561) 209-1027
Shannon.Darsch@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

United States of America
v.
Willie James Skipper, Jr.,

*Defendant(s)*

Case No. 26-mj-8134-RMM

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of November 1, 2025 in the county of Palm Beach in the Southern District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(C) | Possession with Intent to Distribute a Controlled Substance |
| 18 U.S.C. § 924(c)(1)(A)(i) | Possession of a Firearm in Furtherance of a Drug Trafficking Offense |
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm and Ammunition |
| 18 U.S.C. § 844(i) | Arson |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

Special Agent Zachary Schleiffer, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/19/26

*Judge's signature*

City and state: West Palm Beach, FL

Hon. Ryon M. McCabe, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A CRIMINAL COMPLAINT**

I, Zachary F. Schleiffer, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND JURISDICTION**

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and I have been so employed since September 2021. I am currently assigned to PB-2, the Violent Crimes and Major Offender Squad of the Palm Beach County Resident Agency, which investigates bank robberies, narcotics trafficking, fugitives, firearms offenses, and other violent crimes. I have also received training in historical cell-site analysis, cell phone technology, and location-based services.

2. Pursuant to 18 U.S.C. § 3052, I am authorized to apply for and execute search warrants and arrest warrants for offenses enumerated in Titles 18 and 21 of the United States Code. I have participated in and directed investigations involving violent crime, trafficking in controlled substances, and firearms offenses. As a result of my training and experience, I am familiar with the tactics, methods, and techniques of committing those crimes.

3. I make this affidavit in support of an application for a criminal complaint charging WILLIE JAMES SKIPPER JR, herein referred to as "SKIPPER," with Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Section 21 841(a)(1) and (b)(1)(C); Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); Felon in Possession of a Firearm and Ammunition, in violation of Title 18, United States Code, Section 922(g)(1); and Arson, in violation of Title 18, United States Code, Section 844(i).

4. This affidavit is based upon my own personal knowledge of the facts and circumstances surrounding the investigation and information provided to me by other law

enforcement officers. I have not included in this affidavit each and every fact known to me about the matters set forth herein, but only those facts and circumstances that I believe are sufficient to establish probable cause.

5. Based upon my training and experience and the facts as set forth in this affidavit, there is probable cause to charge SKIPPER with Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Section 21 841(a)(1) and (b)(1)(C); Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); Felon in Possession of a Firearm and Ammunition, in violation of Title 18, United States Code, Section 922(g)(1); and Arson, in violation of Title 18, United States Code, Section 844(i).

**BACKGROUND CONCERNING INVESTIGATION**

6. The FBI and local law enforcement have been conducting a joint operation in the City of Lake Worth Beach to curb violent crime and narcotics violations in known areas of the city where these violations have historically taken place.

**PROBABLE CAUSE**

7. On August 29, 2024, law enforcement investigated a criminal mischief and petit theft incident in the area of Lake Worth Beach, Florida and developed probable cause to locate and arrest SKIPPER.

8. SKIPPER was located by law enforcement and taken into custody. Prior to securing SKIPPER in a marked patrol vehicle, law enforcement conducted a search of SKIPPER's person. Law enforcement noted a "solid" object around SKIPPER's groin, which SKIPPER claimed, "It's my nuts," when asked by law enforcement what the object was. Law enforcement then observed a black handle, consistent with a pistol, that was between SKIPPER's body and his clothing. Law

enforcement carefully removed a loaded, back Taurus PT 378 TCP .380 caliber, semiautomatic handgun from SKIPPER's groin and secured the weapon.

9. A further search of SKIPPER's groin yielded six plastic bags that contained a white powdery substance, and a brown cylindrical container, that contained 34 similar sized pieces of a white rock-like substance consistent with crack cocaine totaling 3 grams.

10. SKIPPER was later interviewed and advised his *Miranda* warnings. SKIPPER admitted to possession of the firearm found in his groin and stated that he planned to sell it later. In the same interview, SKIPPER admitted to possession of controlled substances, but claimed the controlled substances were for personal use.

11. In my training and experience, I know that drug dealers often break up crack cocaine into similar sized pieces, so they can quickly conduct a drug transaction for a set dollar figure. This helps conduct a faster transaction, thus thwarting law enforcement from observing a transaction. Additionally, those that engage in the sale of drugs often carry a firearm for protection, as they are often the target for robberies due to the large amounts of cash that they typically carry.

12. The white rock-like substance was submitted into evidence at the Palm Beach County Sheriff's Office and was tested by the laboratory, which yielded a positive result for cocaine.

13. Beginning in August 2025 through December 2025, members of the FBI Palm Beach County Safe Streets Task Force participated in a proactive violent crime suppression operation that intended to target violent offenders in statistically high crime areas of Palm Beach County, Florida. Members of the FBI Palm Beach County Safe Streets Task Force had been working with members of the Palm Beach County Sheriff's Office during this time and had both

observed SKIPPER on numerous occasions and contacted SKIPPER on a traffic stop a short time before November 1, 2025.

14. From August 2025 to October 2025, law enforcement observed SKIPPER regularly conducting what appeared to be hand-to-hand transactions, consistent with the sale of controlled substances in known drug trafficking areas of Lake Worth Beach. Below is a picture of SKIPPER conducting what appeared to be hand-to-hand drug transactions from his vehicle.



15. On November 1, 2025, law enforcement observed SKIPPER conducting hand-to-hand transactions in the area of 630 South Dixie Highway in Lake Worth Beach, Florida. SKIPPER was observed entering and exiting a black Hyundai SUV bearing Florida Tag #FFQC65 after each transaction. A query of the Florida Department of Motor Vehicles confirmed that license plate and vehicle is currently registered to SKIPPER.

16. SKIPPER was known to law enforcement in the area as a known drug dealer. Law enforcement requested a K9 unit to respond to the location of the black Hyundai and conduct an open-air sniff of the vehicle. A certified K9 unit from the City of West Palm Beach Police

Department arrived on scene and conducted an open-air sniff. The certified K9 positively indicated on the black Hyundai.

17. Around the same time, SKIPPER verbally engaged law enforcement from a distance and confirmed that the vehicle was his. Law enforcement advised SKIPPER that the K9 unit had positively indicated on his vehicle and the car was going to be towed and searched. SKIPPER grew increasingly agitated with law enforcement and subsequently left the area on an electric scooter.

18. While law enforcement was awaiting a tow truck to arrive, SKIPPER returned to the scene and approached law enforcement from behind. Law enforcement was within arm's length of the vehicle at the time SKIPPER reapproached the scene and notably, the vehicle was within close proximity to propane tanks that were being stored along the front of a building near the area where SKIPPER's vehicle was parked. SKIPPER then threw a cup of gasoline onto the vehicle and ignited the gasoline, causing a fireball to erupt from the rear of the vehicle. Below is a picture of the incident:



19. SKIPPER immediately attempted to flee the scene and law enforcement acted swiftly at the time of the fire and took immediate action to take SKIPPER into custody.

20. Fire Investigators were called to the scene to determine the cause and origin of the fire. Fire Investigators determined that the fire was arson and collected evidence as part of their

arson investigation. Samples of the suspected liquid, along with SKIPPER's clothes, were later tested by the crime laboratory at the Palm Beach County Sheriff's Office and returned positive results for gasoline.

21. Investigators also recovered a receipt and surveillance footage of SKIPPER purchasing approximately $5 worth of gasoline from the Chevron, located at 602 S. Dixie Highway, Lake Worth Beach, Florida. Law enforcement body worn camera and surveillance footage of another local business captured SKIPPER pouring the gasoline onto the black Hyundai and igniting it.

22. Once the fire was extinguished and the cause and origin investigation was complete, the black Hyundai was deemed safe for towing and the vehicle was towed to the Palm Beach County Sheriff's Office where a search of the vehicle was conducted.

23. A loaded Smith and Wesson SD40VE .40 Caliber handgun was recovered from the vehicle and queried. The result of the query showed the firearm was stolen. Notably, the Palm Beach County Sheriff's Office was able to identify that firearm having been used in a shooting in the City of Lake Worth Beach in 2023. The firearm was also loaded, with six rounds of .40 S&W caliber ammunition. Additionally, law enforcement recovered approximately 95 grams of suspected crack cocaine, ten round blue tablets with an "M" on one side and a "30" on the other side, and approximately $1075 in US Currency from the vehicle.

24. A DNA state search warrant was obtained for SKIPPER and swabs from the recovered Smith and Wesson, along with swabs from a plastic bag containing suspected crack cocaine, and black hide a key container containing narcotics were sent to DNA Labs International for analysis. The analysis provided "very strong support" for the proposition that SKIPPER is a contributor to the DNA profile obtained.

25. The Palm Beach County Sheriff's Office Chemistry Unit conducted an analysis of the suspected crack cocaine and pills found in the black Hyundai. This analysis resulted in the suspected cocaine testing positive for cocaine and the ten round blue tablets, disguised as oxycodone, testing positive for fentanyl.

26. SKIPPER is a two-time convicted felon in the State of Florida under case numbers: 502008CF010602AXXXMB and 502007CF005331AXXXMB and therefore a prohibited person from owning or possessing a firearm.

27. Further, a Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) nexus expert examined the firearm and ammunition recovered on November 1, 2025, to determine whether they moved in interstate or foreign commerce. The nexus expert determined that the firearm and ammunition travelled in or affected interstate and/or foreign commerce.

28. Further, at the time of the November 1, 2025, offense, SKIPPER had a pending charge with the State of Florida for possession of a firearm by a convicted felon, as alleged above, and was out on bond at the time. The evidence recovered from SKIPPER's vehicle supports the allegations that while out on bond, SKIPPER continued to engage in a pattern of behavior consistent with the sale of narcotics and the possession of a firearm by a convicted felon.

**CONCLUSION**

29. Based upon the information contained in this affidavit, I believe that probable cause exists to charge WILLIE JAMES SKIPPER JR. with Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Section 21 841(a)(1) and (b)(1)(C); Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); Felon in Possession of a Firearm and Ammunition, in violation of Title 18, United States Code, Section 922(g)(1); and Arson, in

violation of Title 18, United States Code, Section 844(i).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Zachary F. Schleiffer, Special Agent
Federal Bureau of Investigation

Sworn and Attested to before me by Applicant by Telephone (Facetime) pursuant to Fed. R. Crim. P. 4(d) and 4.1 this 19 day of February 2026.

HON. RYON M. McCABE
UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: Willie James Skipper, Jr.,

**Case No**:

Count #: 1

Possession with Intent to Distribute a Controlled Substance

21 U.S.C. §§ 841(a)(1), (b)(1)(C)
* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Supervised Release:** 3 years to life
* **Max. Fine:** $1,000,000
* **Special Assessment:** $100

Count #: 2

Possession of a Firearm in Furtherance of a Drug Trafficking Offense

18 U.S.C. § 924(c)(1)(A)(i)
* **Max. Term of Imprisonment:** Life
* **Mandatory Min. Term of Imprisonment:** 5 years to run consecutive with any other term of imprisonment imposed on the person
* **Max. Supervised Release:** 5 years
* **Max. Fine:** $250,000
* **Special Assessment:** $100

Count #: 3

Felon in Possession of a Firearm and Ammunition

18 U.S.C. § 922(g)(1)
* **Max. Term of Imprisonment:** 15 years
* **Mandatory Min. Term of Imprisonment:** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000
* **Special Assessment:** $100

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

Count #: 4

Arson

18 U.S.C. § 844(i)

* **Max. Term of Imprisonment:** 20 years
* **Mandatory Min. Term of Imprisonment:** 5 years
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000
* **Special Assessment:** $100

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**